■ In the Matter of GRANDVIEW DAIRY, INC., Appellant, v LOUIS J. LEFKOWITZ, as Attorney-General of the State of New York, Respondent.—Appeal from judgment, Supreme Court, New York County, entered May 16, 1979, dismissed, without costs or disbursements, said judgment having been superseded by subsequent order entered November 26, 1979. Order, Supreme Court, New York County, entered November 26, 1979, which granted petitioner's motion to reargue, and upon reargument, modified subpoena duces tecum to the extent of limiting the time period of the subpoena to a period beginning January 1, 1974, modified, on the law, without costs or disbursements, to the extent hereinafter indicated: Question No. 4 shall read, in part, "Identify all contracts, agreements, or arrangements, including those relating to payment, whether formal or informal * * *;" Question No. 5 shall read, in part, "Identify each Grandview executive, whose duties have included * * *;" Question No. 6 shall read "State whether Carvel Corporation receives any compensation, consideration, discount or economic advantage, whether tangible or intangible, from your company for doing business with your company, and which your company does not give to purchasers of its ice cream mix other than Carvel;" Question No. 8 is vacated; Question No. 9 shall read, "Identify all documents suggesting, stating or determining the prices charged by your company for manufacturing mix for Carvel corporation;" and except, as thus modified, the order is affirmed. We find that, as originally issued, the subpoena was overly broad and burdensome to the extent indicated. Our dissenting brother would quash the subpoena in its entirety, in part, because of the length and

complexity of the instructions and definitions. Concededly, having to wade through seven pages of preliminary instructions is enough to vex the most compliant of those attempting to answer the combination subpoena-interrogatories. We are of the view, however, that such instructions are essential if interrogatories are to serve as a useful tool for gathering evidence against a corporate entity. Without the instructions the interrogatories might well be stripped of all efficacy through evasiveness and nonresponsiveness by the corporate officer answering the interrogatories. Although the Attorney-General is seeking almost identical disclosure in a pending civil action which he has brought against petitioner, he should not be barred in his efforts to obtain the same information for possible use against others and even possible criminal prosecution. The authority of the Attorney-General to continue his investigation following the commencement of an antitrust action is well established. *(State of New York v Mobil Oil Corp.,* 40 AD2d 369, affd 33 NY2d 627; *Long Is. Moving & Stor. Assn. v Lefkowitz,* 24 AD2d 452, mot for lv to app den 17 NY2d 419, app dsmd 17 NY2d 918; General Business Law, § 343.) The instant investigation involves the business activities of Carvel Corporation, and its suppliers, of which petitioner is but one. The Attorney-General is seeking to determine if Carvel's suppliers and others have engaged in illegal restraints of trade with Carvel, and if so, whether proceedings should be brought against them. Statutes of Limitation for criminal and civil actions under the Donnelly Act vary, and the possibility looms that the criminal statute might run before disclosure in the civil action is completed. In any event, as noted above, a party is not immune from the Attorney-General's subpoena merely because simultaneously it is involved in civil litigation with the State. Concur—Fein, J. P., Sullivan and Carro, JJ.

Silverman, J., dissents in part in a memorandum as follows: I agree with the modifications which the majority makes in the so-called subpoena, but I would go further. If I let the subpoena stand at all, I would strike the entire section of instructions and definitions and direct that all questions and demands, as modified, should be answered and complied with in accordance with their ordinary and natural meaning without regard to the attempted expansion and modifications in the instructions and definitions. However, in the present case, I would simply strike the whole subpoena without prejudice to the service of a new subpoena fairly directed to the information and documents which the Attorney-General desires for use in his continuing investigation as distinct from their use in the plenary suit now pending between the parties. The so-called subpoena, which is really a combination of subpoena and interrogatories, covers 15 pages in the record, of which the first seven consist of instructions and definitions. The use of such instructions and definitions has become a widespread abuse of discovery procedures as a device by which the subpoena is exponentially expanded and the burdens upon the party to whom the subpoena and interrogatories are directed unreasonably multiplied. Thus, for example, the instructions include: "B. With respect to the answer to each question, or subpart thereof: (1) state the source of the information given therein with as much particularity as possible including, without limitation, the nature and designation of any files that contain such information; (2) identify all documents used to supply each such answer; and (3) identify each person who provided any information included in such answer and each other person whom you know or believe to have some or all of the information sought in such question or subpart thereof." Then the definitions go on to provide, among other things: " 'Identify' or 'identification' when used in reference to a natural person

means to state that person's full name, present or last known address, present or last known position and business affiliation, and with respect to your company, that person's title in each position held, and tenure in each position held at all times during the period covered by this subpoena. 'Identify' or 'identification' when used in reference to a corporation means to state its full name and address, date and state of incorporation, and principal place of business. 'Identify' or 'identification' when used in reference to a business entity other than a corporation means to state the full name under which its does business, the principal place or places from which it conducts business, its proprietor, owner, partners, or other business entities which constitute the ownership of the business entity. 'Identify' or 'identification' when used in reference to organizational units means to state the full name of the unit and its organizational relationships to all superior, subordinate, or co-equal units. 'Identify' or 'identification' when used in reference to a document means to state the type of document (e.g. letter, memorandum, telegram, chart, etc.), date, author, addressee, title, file and identifying number and symbol, its present location, and the name and address of its custodian. If any such document was, but is no longer in your possession or subject to your control, state what disposition was made of it and the date thereof. 'Identify' or 'identification' when used in reference to an oral communication means to state the parties and witnesses to the oral communication and the place, time, manner and substance of the oral communication." The first question reads: "1. State the full and exact name and address of your company, its principal place of business, the date and state of its incorporation, and the name and address of each parent, subsidiary and affiliate person, and the ownership relation to each." Applying the instructions and definitions to answer just this question would require the person answering it to state the source of the information and the other matters referred to in Instruction B and the definitions above. Thus he would have to say that he got the information as to the name and address and the ownership relation to each of each parent, subsidiary and affiliate person, from talking to his lawyer and to fellow officers and employees, and let us say, an examination of the annual report of each company and perhaps reports filed with government regulatory agencies. He would have to state where in each file each of these documents is contained, and the name and address of its custodian and the author, addresses, title, etc. He would have to state as to his lawyer and his fellow employees, the name and address of each, his present and last known business affiliation, his title and his tenure, and as to oral communications, the substance, time, place and even witnesses thereto, etc., etc., etc. And this would have to be done as to almost every question and subquestion contained in eight pages of questions and demands. Instructions and definitions as broad and pervasive as this are an unreasonable multiplication of the burdens involved in complying with the subpoena. No one asking a witness a question would dare to preface it with seven pages of instructions and definitions, each expanding the meaning of the question far beyond what the question appears to ask. Persons attempting to comply with any of the demands or questions should be able to read that demand or question and understand and comply with it without having to refer back to seven pages of instructions and definitions. There is another defect for which I would strike the whole subpoena. There is a plenary suit pending between the parties in the courts in which interrogatories and demands have been served which are said to be almost word for word the same as those here involved. It is true that section 343 of the General Business Law states that the Attorney-

General's "power of subpoena and examination shall not abate or terminate by reason of any action or proceeding brought by the attorney general under this article." Under that provision, I would say that if the Attorney-General is in fact pursuing some investigation which is not merely preparation for the trial of the pending lawsuit, he may continue to exercise his power of subpoena and examination, even if there be some overlapping with the information requested for use in the pending plenary suit. But when, as is here conceded, the investigatory subpoena and demands are almost word for word the same as those served in the plenary suit, I can only conclude that in the guise of continuing the investigation, the Attorney-General is simply pursuing discovery for use in the lawsuit, avoiding the "inconvenience" of the normal judicial supervision by way of protective order or otherwise of such discovery which is normally available in the course of a lawsuit. I think this is a misuse of the Attorney-General's investigatory powers.