OPINION OF THE COURT
Norman C. Ryp, J.
Motion Nos. 99 and 194 are consolidated herein for disposition.
Petitioners move for an order, pursuant to CPLR 2304 and 3103 to quash two subpoenas, respectively dated (1) December 30,1980, and (2) February 18,1981, duly served upon petitioners on (1) December 31, 1980, and (2) February 23, 1981, by the Attorney-General of the State of New York (Attorney-General). These are in connection with a pending investigation of Suffolk County title insurance companies and examiners of alleged violation(s), through alleged price-fixing agreements from 1968 to date, of article 22 of the General Business Law (§ 340 et seq.).
Petitioner Kushner, the vice-president of First American Title Company (hereinafter First American) was served a *330 subpoena ad testificandum on February 18, 1981, returnable March 3, 1981 at the Attorney-General’s law offices. Petitioner Kushner challenges said subpoena on the same ground as the subpoena to require filing of written statement and production of documents duly served on December 31, 1980, upon his employer, First American, and returnable January 23, 1981, at the Attorney-General’s law offices. In addition, First American was also served with interrogatories.
Petitioners challenge said subpoenas on: lack of jurisdiction by the Attorney-General to conduct subject investigation, more properly within the province of the New York State Department of Insurance; the procedural ground that the administrative interrogatories are unauthorized under section 343 of the General Business Law and CPLR article 23; and that the interrogatories and production of documents requested are unduly oppressive, requiring total vacatur not “judicial pruning”.
Petitioner, First American, is one of four title insurance companies to be issued subpoenas in the pending investigation. As noted above, the Attorney-General is currently conducting an inquiry concerning alleged price-fixing agreements on the part of certain title insurance companies and title examiners in Suffolk County for the period commencing in or about 1968 up to the present. The Attorney-General alleges that the parties involved have been engaged in a continuous violation(s) of the Donnelly Antitrust Act (General Business Law, §§ 340-347).
Petitioners’ principal argument is that the Attorney-General is not the proper party to conduct this investigation. Petitioners claim that there is a legislative mandate that investigations of title insurance companies be conducted by the New York State Superintendent of Insurance, who has primary, if not exclusive, jurisdiction over these matters. Petitioners claim the statutory authority for this alleged mandate is subdivision 2 of section 340 of the General Business Law. This contention is without merit, in that subdivision 2 of section 340 explicitly states that this article (22) shall apply to licensed insurers, brokers, adjusters and “[all] other persons and organizations subject to the provisions of the insurance law”. The statute then *331 provides for a limited exception in article 8 of the Insurance Law. Petitioners contend that this exception applies to their situation. However, nothing in said article 8 applies to price-fixing agreements between title insurers and title examiners, the subject matter of the instant investigation. Article 8 is concerned with price discrimination as it applies to insurance rates charged by insurers and the customers to which they sell insurance (Insurance Law, § 180 et seq.). Furthermore, petitioners contend that article 9-D of the Insurance Law which regulates unfair methods of competition (Insurance Law, § 270 et seq.) precludes the Attorney-General from conducting this inquiry.
However, the mere fact that both the Insurance Department and the Attorney-General may have concurrent jurisdiction over a matter does not divest the Attorney-General of his authority to conduct an investigation under section 340 of the General Business Law. Moreover, the Insurance Department is not investigating this alleged price-fixing arrangement (between insurer and customer) and even if it were, section 277 of the Insurance Law provides that “[n]o order of the superintendent [of Insurance] under this article *** shall in any way relieve or absolve any person affected by such order from any liability under any other laws of this state.”
The Attorney-General, pursuant to section 343 of the General Business Law, has been granted extensive authority to conduct investigations in the public interest. In order for a court to enforce a subpoena issued by the Attorney-General in its entirety, it must be demonstrated that an adequate factual basis for issuance of the subpoena exists; and that said subpoena is proper in form requesting only information which is relevant and material to the pending investigation (Matter of Hynes v Moskowitz, 44 NY2d 383, app dsmd sub nom. Lerner v Hynes, 439 US 888; Matter of Crowley Foods v Lefkowitz, 75 AD2d 940).
The Attorney-General has put forth a sufficient factual basis indicating that petitioners may be engaged in acts prohibited by section 340 of the General Business Law or have participated in violations of the Donnelly Act by the independent title examiners of Suffolk County. The Attorney-General is not required to disclose the probable cause *332 and scope of the investigation in order to justify the issuance of a subpoena (Matter of Hynes v Moskowitz, supra; Matter of Hirschorn v Attorney-General of State of N.Y., 93 Misc 2d 275, affd 63 AD2d 865). As long as the Attorney-General shows that the requested information bears a reasonable relationship to the subject matter under investigation and the public interest to be served, the courts will not vacate the subpoena in its entirety (Matter of La Belle Creole Int., S.A. v Attorney-General of State of N.Y., 10 NY2d 192).
Petitioners’ claim that the Attorney-General is without authority to issue administrative interrogatories is equally without merit. Section 343 of the General Business Law provides the Attorney-General with wide-reaching authority to conduct antitrust investigations as thoroughly as necessary, so long as the information sought is relevant to the inquiry. The issuance of a subpoena with attached interrogatories can serve as a useful tool for gathering evidence against a corporate entity in an antitrust investigation (Matter of Grandview Dairy v Lefkowitz, 76 AD2d 776).
The Attorney-General states that petitioners’ attorneys, in or about January, 1981, had discussed narrowing the scope of inquiry in order to make it easier for petitioners to comply with said First American subpoena. The Attorney-General claims that they had mutually agreed upon limiting certain interrogatories before the instant motion to quash the subpoena was made.
There is no basis for this court, at this time, to limit the scope of the Attorney-General’s inquiry. However, in view of the apparent willingness of the Attorney-General to accommodate petitioners, any further difficulties which arise with respect to petitioners’ compliance with said subpoenas should first be addressed to the Attorney-General, without prejudice to an appropriate application to the court.
For the foregoing reasons, petitioners’ application is denied.