Dr. Phillip J. SOLLA, Dr. Andrew Lacerenza and Dr. Nicholas Napolitano, individually and on behalf of all others similarly situated, Plaintiffs,

v.

AETNA HEALTH PLANS OF NEW YORK INC, et al., Defendants.

No. 93 CV 5473(NG).

United States District Court, E.D. New York.

July 13, 1998.

William E. Weber, Laurence P. Meyer, Weber & Weber, Hauppauge, NY, for Plaintiffs.

Bruce H. Schneider, Andrew Schwartz, Stroock & Stroock & Lavan, LLP, New York, NY, for Managed Health Inc. and Health Ins. Plan of Greater New York, Inc.

Sutton Keany, Bryan Dunlap, Winthrop, Stimsom, Putnam & Roberts, New York, NY, for Oxford Health Plans of New York Inc.

Mitchell C. Shapiro, Leslie F. Spasser, Constantine & Partners, P.C., New York, NY, for Sanus Health Plan of Greater New York, Inc.

Phillip Proger, Kevin D. McDonald, Jones, Day, Reavis & Pogue, Washington, DC, for Cigna HealthPlan of New York.

Debra J. Pearlstein, Jon Bloom, Weil, Gotshal & Manges, LLP, New York, NY, for Empire Blue Cross and Blue Shield Inc.

Craig P. Murphy, Susan F. Jennison, Windels, Marx, Davies & Ives, New York, NY, for Travelers Health Network of New York, Inc.

Susan G. Fillichio, Joseph Powers, Sedgwick, Detert, Moran & Arnold, New York, NY, for Choice Care of Long Island Inc.

William J. O'Shaughnessy, Harvey Kaish, McCarter & English, Newark, NJ, for Aetna Health Plans of New York, Inc.

William G. Kopit, Epstein, Becker & Green, P.C., Washington, DC, for Prudential Health Care Plan of New York, Inc.

Kenneth J. Kelly, Epstein, Becker & Green, P.C., New York, NY, for U.S. Healthcare, Inc.

Steven B. Getzoff, Carl Schaerf, Lester, Schwab, Katz & Dwyer, New York, NY, for Metropolitan Life Healthcare Network of New York, Inc.

## MEMORANDUM AND ORDER

GERSHON, District Judge.

Plaintiffs, three chiropractors licensed to practice in New York, bring this antitrust action pursuant to the Sherman Act, 15 U.S.C. § 1, and its New York counterpart, the Donnelly Act, N.Y.Gen.Bus.Law § 340(1), alleging that defendants, twelve Health Maintenance Organizations ("HMOs") licensed to operate in New York, engaged in unlawful conspiracies and combinations to exclude chiropractors from providing health care services to HMO enrollees. All defendants seek summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing plaintiffs' Fourth Amended Complaint. Plaintiffs seek leave to file a Fifth Amended Complaint.

### FACTS

Unless otherwise indicated, the following facts are undisputed. Plaintiffs are three chiropractors, licensed to practice in New York pursuant to N.Y.Educ.L. § 6554, who maintain their businesses in Suffolk County, NY.[1] By statute, the practice of chiropractic is defined as:

> detecting and correcting by manual or mechanical means structural imbalance, distortion, or subluxations in the human body for the purpose of removing nerve interference and the effects thereof, where such interference is the result of or related to distortion, misalignment or subluxation of or in the vertebral column.

N.Y.Educ.L. § 6551(1).

Defendants are twelve HMOs licensed to operate in New York pursuant to Article 44 of New York Public Health Law. N.Y.Pub. Health L. §§ 4400, et seq. Two of the defendants, Health Insurance Plan of Greater New York, Inc. ("HIP") and Managed Health, Inc. ("Managed Health"), operate group-model HMOs. This means that they contract with groups of physicians in the localities they serve to provide health care

---

1. In the Fourth Amended Complaint, plaintiffs for the first time purport to represent a class of "chiropractors in seven counties." On May 21, 1996, the Honorable Arthur D. Spatt, to whom this case was previously assigned, ordered that the question of class certification be delayed until after the court's decision on defendants' anticipated motion for summary judgment. It is well within the court's discretion to determine the merits of the claim before acting on class certification. *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 238 (2d Cir.1998).

services to their enrollees. HIP contracts with six main constituent groups, and Managed Health contracts predominantly with Community Health Program of Queens–Nassau ("CHP"). The remaining defendants— Sanus Health Plan of Greater New York, Inc., now known as NYLCare Health Plans of New York, Inc. ("NYLCare"), CIGNA Healthplan of New York, Inc. ("CIGNA"), Empire Blue Cross and Blue Shield ("Empire"), Travelers Health Network of New York, Inc., ("THN of NY"), Oxford Health Plans (New York), Inc. ("Oxford"), Choice-Care Long Island, Inc, now known as VYTRA Healthcare ("VYTRA"), Aetna Health Plans of New York, Inc. ("AHPNY"), U.S. Healthcare, Inc. ("U.S.Healthcare"), The Prudential Health Care Plan of New York, Inc. ("Prucare"), MetLife HealthCare Network of New York, Inc. ("MetLife")—operate independent practice association ("IPA") model HMOs. As IPA-model HMOs, they contract directly with independent physicians or practice groups for the provision of health care services to their members.

Under New York law, each HMO is required to provide comprehensive health services to its enrollees. N.Y.Pub.Health L. § 4403(1)(a). The HMOs are also obligated to provide each HMO enrollee with a primary care practitioner ("PCP"). 10 N.Y.C.R.R. § 98.13(b). A PCP is "a physician or other licensed provider who supervises, coordinates and provides initial and basic care to enrollees and maintains continuity of care for enrollees." 10 N.Y.C.R.R. § 98.2(t). With regard to referrals, the HMO or the PCP on behalf of the HMO is responsible for the "identification and selection of an appropriate provider of care in each individual instance where services are determined to be necessary for the enrollee." 10 N.Y.C.R.R. § 98.13(c).

Defendants offer varying levels of coverage for chiropractic services. Five defendants, AHPNY, THN of NY, CIGNA, MetLife and Prucare, offer chiropractic coverage as part of their basic plan. Three defendants, NYLCare, U.S. Healthcare and Empire offer chiropractic-related services through an optional rider to employers who desire additional coverage. And four defendants, HIP, Managed Health, Oxford and VYTRA, do not offer chiropractic coverage at all.

## The Complaint

This action arises out of the alleged exclusion of chiropractic doctors from providing health care services to HMO enrollees in the five counties of New York City, and Nassau and Suffolk counties on Long Island. The plaintiffs complain that, even where chiropractors are the most cost-effective providers of treatment for "mechanical-structural disorders of the back and neck," HMOs have failed to "authorize" chiropractors as providers for their enrollees.

The Fourth Amended Complaint makes three claims under the Sherman Act and under New York's Donnelly Act. One claim is that "[i]n each and every one of the HMOs, two or more persons in power—whose identities are well known within each said HMO . . . have formed one or more conspiracies [to] boycott . . . chiropractic doctors." The intra-HMO conspiracies are alleged to set policies for the coverage levels of chiropractic care that "withhold[ ] treatment options from patients and . . . promulgat[e] restrictions on chiropractic services." It is also alleged that, within each intra-HMO conspiracy, "MDs [are] agreeing among themselves to under-refer enrollees to chiropractic doctors in order to bolster overall MD income." According to the complaint, each of the conspirators within each HMO "is excessively driven by objectives that are disparate from those of the HMO—by an impermissible personal stake" in the outcome. A second claim is that the failure of each HMO to "authorize" chiropractors in such situations renders each HMO "by itself" a "combination in restraint of trade." A third claim alleges the existence of an inter-HMO conspiracy in which "[r]epresentatives of some or all of the HMOs have conspired with each other to tolerate the aforesaid intra-HMO conspiracies."

## Procedural History

Plaintiffs amended their complaint three times before their allegations were tested on a motion to dismiss. In an order of June 16, 1995, Judge Spatt denied defendants' motion to dismiss plaintiffs' Section 1 claims, concluding that "the complaint barely pleads a

cause of action under Section 1 of the Sherman Act against the defendant HMOs." When plaintiffs sought to amend their complaint again before defendants filed a motion for summary judgment, Judge Spatt adopted the report and recommendation of the Honorable E. Thomas Boyle, Magistrate Judge, in an order dated May 21, 1996, and granted plaintiffs' motion for leave to file the Fourth Amended Complaint on the following conditions:

1) no further amendment will be permitted to the complaint except upon a showing of good cause and upon facts that are not known, or with reasonable diligence could not have been known at the time of the filing of the Fourth Amended Complaint.

2) No Enlargement of Phase I discovery based on any new allegations in the Fourth Amended Complaint.

3) Discovery with respect to the putative class and any motion for class certification is stayed pending the outcome of HMO Defendants' motion for summary judgment; and

4) Withdrawal with prejudice of the monopoly cause of action pursuant to Section 2 of the Sherman Act (third cause of action of the third Amended Complaint.)

Discovery had been divided into two phases. Phase I of discovery, which involved the coverage and referral policies of the HMO defendants regarding chiropractic care, has been completed. Plaintiffs have received all the computerized data regarding each defendant's coverage and referral practices with regard to chiropractic. Plaintiffs have also conducted the depositions of at least one representative of each of the defendants. Phase II of discovery was designated to include materials regarding the cost-effectiveness of chiropractic care as compared to care by medical doctors. Because of this division of discovery, plaintiffs did not have full discovery regarding the cost-effectiveness of chiropractic versus medical care prior to the motion for summary judgment. Therefore, solely for purposes of the motion for summary judgment, defendants do not argue that plaintiffs cannot present an issue of fact as to whether care by chiropractors is more cost-effective than care by medical doctors.

## DISCUSSION

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### Summary Judgment Standards

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions ·on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is the movant's burden to demonstrate the absence of any genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 175, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). A material fact is one whose resolution would "affect the outcome of the suit under governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

■ Even in factually complex cases, such as antitrust cases, summary judgment is not disfavored. Rather, "summary judgment [is] a vital procedural tool to avoid wasteful trials and may be particularly important in antitrust litigation to prevent lengthy and drawn-out litigation." *Capital Imaging Associates v. Mohawk Valley Medical Associates,* 996 F.2d 537, 541 (2d Cir.1993) (citing *Matsushita,* 475 U.S. at 585–88, 106 S.Ct. 1348).

### Intra–HMO Conspiracies

■ Under Section 1 of the Sherman Act, "every contract, combination in the form of

trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States ... is declared to be illegal." 15 U.S.C. § 1. To establish a claim under Section 1, plaintiffs must first demonstrate "some form of concerted action between at least two legally distinct economic entities" and then demonstrate that the agreement constituted an unreasonable restraint of trade. *Capital Imaging*, 996 F.2d at 541. Defendants seek summary judgment on the ground that plaintiffs cannot establish a genuine issue of material fact as to the existence of concerted action.

■ A showing of concerted action requires "evidence that tends to exclude the possibility that [the alleged conspirators] were acting independently." *Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752, 764, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984). That is, plaintiffs must demonstrate that there was "a conscious commitment to a common scheme designed to achieve an unlawful objective." *Id.* (quotations omitted).

■ The requirement of concerted action between separate entities means that "wholly unilateral" conduct is not actionable under Section 1. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984) (citation omitted). Also, officers, agents or employees of a single entity are legally incapable of conspiring together for purposes of Section 1. *Id.* at 771, 104 S.Ct. 2731. In discussing the "intra-enterprise conspiracy doctrine" the Supreme Court explained:

> [I]t is perfectly plain that an internal "agreement" to implement a single, unitary firm's policies does not raise the antitrust dangers that § 1 was designed to police. The officers of a single firm are not separate actors pursuing separate economic interests, so agreements among them do not suddenly bring together economic power

that was previously pursuing divergent goals.... For these reasons, officers or employees of the same firm do not provide the plurality of actors imperative for a § 1 conspiracy.

*Id.* at 769, 104 S.Ct. 2731.

■ An exception to the intra-enterprise conspiracy doctrine applies to individuals within a single entity when they are pursuing economic interests separate from the entity. *Capital Imaging*, 996 F.2d at 544–45. These individuals, whose personal economic interests are furthered by the objectives of the alleged conspiracy, are legally capable of conspiring for purposes of Section 1. *Id.* In *Capital Imaging*, the Court of Appeals found that member physicians of an independent practice association that contracted with an HMO to provide medical services for HMO patients were legally capable of conspiring with one another to deny a competing group of radiologists access to HMO patients. *Id.* at 544. These physicians had the requisite personal interest in the outcome of the conspiracy because they "[we]re not staff physicians employed by the HMO on a salaried basis, that is, they [we]re not agents of the HMO. Instead, these health care professionals [we]re independent practitioners with separate economic interests." *Id.*

According to plaintiffs, there are intra-HMO conspiracies operating within each defendant to accomplish two objectives. First, they contend that there are intra-HMO conspiracies to establish coverage policies that exclude or restrict chiropractic services. Second, they assert that there are intra-HMO conspiracies, consisting of primary care practitioners ("PCPs") conspiring with each other, to under-refer HMO enrollees to chiropractors.[2] Defendants contend that plaintiffs have failed to demonstrate any evidence of intra-HMO conspiracies of either variety.

---

**2.** Defendants contend that intra-HMO conspiracies to under-refer cannot exist within the four defendants that do not offer coverage for chiropractic services at all. Plaintiffs, however, dispute the contention that referrals require chiropractic coverage and contend instead that the intra-HMO conspiracies to under-refer exist in all defendants without regard to coverage policies. In their brief, they explain: "HMO decla-

rations of coverage are merely packaging: referral requires authorization; what is authorized need not have been covered. A cost-effective HMO authorizes a non-covered service whenever it is medically necessary." Pl. Br. at 5. In light of my conclusion that, even where there is coverage, summary judgment is proper, the viability of plaintiffs' argument need not be addressed.

■ As "wholly unilateral" conduct is not actionable under Section 1, *Copperweld*, 467 U.S. at 768, 104 S.Ct. 2731, plaintiffs' claim of intra-HMO conspiracies to establish coverage policies that exclude or restrict chiropractic services fails absent a showing that the alleged policymakers had a personal stake in the outcome of their policy decisions. Plaintiffs, however, have offered no explanation of how policymakers at any of the defendant HMOs could personally benefit from making policy decisions to restrict chiropractic options. Moreover, plaintiffs' claim is unsupported by any evidence of a conspiracy. Plaintiffs have not identified any individuals who made any decisions regarding coverage policies on chiropractic services, nor demonstrated that any of those individuals conspired with one another. For this reason as well, plaintiffs' claim of intra-HMO conspiracies to establish coverage policies fails. *See Maric v. St. Agnes Hospital Corp.*, 65 F.3d 310, 313 (2d Cir.1995).

■ Plaintiffs seek to bring their claim of intra-HMO conspiracies to under-refer HMO patients to chiropractors within the exception to the *Copperweld* doctrine by arguing that the PCPs had personal interests in the outcome of the alleged conspiracy. But they have offered no evidence in support of the exception. Plaintiffs have not explained how a PCP might profit personally from referring an HMO patient needing treatment for a mechanical-structural disorder of the back or neck, for example, to a medical doctor rather than to a chiropractor. In contrast, in *Capital Imaging*, the physicians of an independent practice association were capable of conspiring for purposes of Section 1 because, as they were in direct competition with other groups of physicians, they had a direct personal stake in denying a group of radiologists access to their HMO patients. 996 F.2d at 544. Here, plaintiffs have not explained how, using referrals to other doctors, the PCPs have a personal interest in the outcome. Plaintiffs do not demonstrate, for example, that the PCPs agreed to refer HMO patients to one another in order to boost their personal incomes. Since there has been no showing that the PCPs had a personal interest in the intra-HMO conspiracies, the PCPs are incapable of conspiring for the purpose of under-referring patients to chiropractors.

Even if it were shown that the PCPs had personal interests in the outcome of the alleged conspiracy, plaintiffs have nevertheless failed to explain how those personal interests differ from the interests of their respective HMOs. A recent decision of another district court, facing the same issue in a case brought by other chiropractors, concluded that the interests of the PCPs did not diverge from those of the HMOs. *Day v. Fallon Community Health Plan*, 917 F.Supp. 72 (D.Mass. 1996). The *Fallon* court persuasively reasoned:

> If the conspirators have agreed to under-refer enrollees to chiropractors, they either 1) over-refer enrollees to medical doctors to compensate for such under-referrals, or 2) simply under-refer to chiropractors, without a corresponding increase in referrals to medical doctors. Under the first alternative, the total number of referrals remains the same, the conspirators do not increase their income and the alleged divergent financial incentive of the conspirators to under-refer enrollees to chiropractors does not exist. Under the second alternative, the total number of referrals decreases and both the conspirators and the HMOs increase their income under the alleged incentive system. The financial interests of the conspirators, in the latter case, do not diverge from those of the HMOs. In neither event, does the plaintiffs' allegation of divergent interests between the conspirators and their HMOs make any sense.

*Id.* at 77–78. In sum, the personal interests of the PCPs do not diverge from the interests of the HMOs; the PCPs are therefore legally incapable of conspiring for the purpose of under-referring HMO patients to chiropractors.

Finally, even if the PCPs within each HMO had the capacity to conspire to under-refer, plaintiffs failed to produce any evidence that they actually did conspire with each other. In *Capital Imaging*, the court explained the plaintiffs' burden to show an antitrust conspiracy at the summary judgment stage:

The mere opportunity to conspire does not by itself support the inference that such an illegal combination actually occurred. A plaintiff must prove that the defendants illegally conspired.... [T]his means that a plaintiff—to withstand defendants' summary judgment motion—must present evidence that casts doubt on inferences of independent (not combined) action or proper conduct by defendants.

996 F.2d at 545 (citations omitted).

Plaintiffs have failed to identify a single PCP from any HMO who actually conspired with another PCP to under-refer HMO enrollees to chiropractors. Plaintiffs instead ask the court to infer a conspiracy, relying on the defendants' concession, for purposes of this motion, regarding the cost-effectiveness of chiropractic care. Their contention is that, as chiropractors are more cost-effective for the work they do than medical doctors, each referral to a medical doctor necessarily constitutes an under-referral. And as "cost-effectiveness is to be expected in HMOs," plaintiffs argue that the existence of under-referrals alone "bears witness to concerted action." Pl. Br. at 27. Plaintiffs' argument that all referrals to medical doctors represent under-referrals—even if true—would nevertheless be insufficient to "cast doubt on inferences of independent (not combined) action or proper conduct by defendants." *Capital Imaging*, 996 F.2d at 545. "In the context of antitrust litigation the range of inferences that may be drawn from ambiguous evidence is limited; the non-moving party must set forth facts that tend to preclude an inference of permissible conduct." *Id.* at 542. Plaintiffs' showing fails to establish a conspiracy because they have offered nothing to suggest that the referral decisions, even if they were all under-referrals, were motivated by impermissible conduct, as opposed to independent action of the PCPs.

**Intra–HMO Combinations**

■ Plaintiffs allege that each HMO defendant is "by itself .. a combination in restraint of trade." Plaintiffs suggest that there is a distinction between combination and conspiracy for purposes of a Section 1 claim and that there is no concerted action

requirement for an illegal "combination." There is, however, no support for this suggestion. The "contract, combination or conspiracy" language of Section 1 encompasses a single concept meaning "concerted action." *See, e.g., Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir.1996) ("For a section 1 claim under the Sherman Act, a plaintiff must prove concerted action, a collective reference to the 'contract ... combination, or conspiracy.'") (citations omitted); *Todorov v. DCH Healthcare Authority*, 921 F.2d 1438, 1455 (11th Cir.1991) ("The terms 'contract, combination ... or conspiracy' are used interchangeably to describe the requisite agreement between two or more persons to restrain trade."). This Circuit has used the terms interchangeably. *See, e.g., Capital Imaging*, 996 F.2d at 545 ("The mere opportunity to conspire does not by itself support the inference that such an illegal combination actually occurred."). Therefore, plaintiffs' claim must be evaluated within the traditional framework for Section 1 claims.

Since "wholly unilateral" conduct is not proscribed by Section 1, *Copperweld*, 467 U.S. at 768, 104 S.Ct. 2731, an HMO "by itself" cannot constitute an illegal combination unless plaintiffs demonstrate that individuals within the HMO with personal interests in the outcome of the alleged conspiracy have conspired with one another. *Capital Imaging*, 996 F.2d at 544–45. As shown above, plaintiffs are unable to make this showing.

**Inter–HMO Conspiracies**

Plaintiffs' third claim is entirely derivative of the 12 intra-HMO conspiracies alleged in the first and second claims. The complaint alleges that "[r]epresentatives of some or all of the HMOs have conspired with each other to tolerate the ... intra-HMO conspiracies." Since plaintiffs have failed to demonstrate the existence of any intra-HMO conspiracies, there cannot be any inter-HMO conspiracies tolerating them.

**State Claims**

■ New York's Donnelly Act, N.Y.Gen.Bus.L. § 340 is modeled on the Sherman Act, 15 U.S.C. § 1, and generally is construed in accordance with federal precedents. *Re–Alco Industries, Inc. v. National*

*Center for Health Education, Inc.,* 812 F.Supp. 387, 393 (S.D.N.Y.1993) (citing *Anheuser–Busch, Inc. v. Abrams,* 71 N.Y.2d 327, 335, 525 N.Y.S.2d 816, 520 N.E.2d 535 (1988)). Plaintiffs do not identify any "State policy [or] differences in the statutory language or the legislative history" that would justify construing the Donnelly Act differently from the Sherman Act in this case. *Anheuser–Busch, Inc. v. Abrams,* 71 N.Y.2d at 335, 525 N.Y.S.2d 816, 520 N.E.2d 535. Instead, both sides have proceeded under the express belief that the analysis under the Sherman Act also applies to the state law claims. Therefore, plaintiffs' claims under New York law are dismissed for the same reasons outlined above.

## PLAINTIFFS' MOTION FOR LEAVE TO FILE A FIFTH AMENDED COMPLAINT

■ Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires." Leave to amend should be liberally granted absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Plaintiffs' motion for leave to amend the Fourth Amended Complaint proposes to replace defendants HIP and Managed Health, who operate group-model HMOs, with their seven constituent medical groups. Plaintiffs do not suggest, however, that the proposed Fifth Amended Complaint is based upon newly discovered information or any "good cause" as required by Judge Spatt's Order of May 21, 1996. Indeed, they do not dispute that the information regarding the seven constituent medical groups of HIP and Managed Health was included in the depositions of the representatives of HIP and Managed Health, which were conducted before the filing of the Fourth Amended Complaint. Plaintiffs thus have failed to meet the express conditions of Judge Spatt's Order for further amendments of the complaint.

Granting plaintiffs leave to amend the complaint would also be futile. The proposed complaint substitutes the constituent medical groups for HIP and Managed Health, but it nevertheless alleges the same claims being dismissed in this opinion. Although plaintiffs concede that discovery with regard to the coverage and referral practices of proposed additional defendants has already been provided, the proposed complaint does not include any additional factual allegations with regard to these proposed defendants. The proposed Fifth Amended Complaint therefore would be insufficient to survive defendants' motion for summary judgment and would fail for the same reasons stated here. Since leave to amend would be futile, plaintiffs' motion for leave to amend the Fourth Amended Complaint is denied.

## CONCLUSION

Defendants' motion for summary judgment is granted. Plaintiffs' motion for leave to file a Fifth Amended Complaint is denied. The Clerk of Court is directed to enter judgment dismissing the complaint.

**SO ORDERED.**