M&T Bank Corp. v Moody's Invs. Servs., Inc. (2021 NY Slip Op 00706)





M&T Bank Corp. v Moody's Invs. Servs., Inc.


2021 NY Slip Op 00706


Decided on February 5, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 5, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., PERADOTTO, LINDLEY, AND BANNISTER, JJ.


758 CA 19-02372

[*1]M & T BANK CORPORATION, PLAINTIFF-RESPONDENT,
v
MOODY'S INVESTORS SERVICES, INC., DEFENDANT-APPELLANT. [GEMSTONE ACTION] - M & T BANK CORPORATION, PLAINTIFF-RESPONDENT, 
 MOODY'S INVESTORS SERVICES, INC., DEFENDANT-APPELLANT. [CAIRN ACTION] 






DUANE MORRIS LLP, NEW YORK CITY (JAMES J. COSTER OF COUNSEL), AND ZDARSKY, SAWICKI & AGOSTINELLI LLP, BUFFALO, FOR DEFENDANT-APPELLANT. 
HODGSON RUSS LLP, BUFFALO (JODYANN GALVIN OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 


 Appeal from an order of the Supreme Court, Erie County (Deborah A. Chimes, J.), entered November 6, 2019. The order, insofar as appealed from, granted those parts of the motion of plaintiff to quash a nonparty subpoena and for a protective order. 
It is hereby ORDERED that the order insofar as appealed from is unanimously reversed on the law without costs and the motion is denied in its entirety.
Memorandum: As we explained in our decision on the prior appeal in this matter (M & T Bank Corp. v McGraw-Hill Cos., Inc., 126 AD3d 1414 [4th Dept 2015]), plaintiff, a financial institution, commenced these actions against defendant, an investment ratings agency, seeking to recover approximately $77 million it lost from its investment in structured finance securities. As alleged by plaintiff, it invested in notes in early 2007 that were part of certain collateralized debt obligations (CDOs). The subject CDOs were collateralized in part by residential mortgage backed securities (RMBS), which were bonds backed by pools of residential mortgage loans. A substantial portion of the CDOs were comprised of subprime RMBS. Each class of notes, or "tranche," purchased by plaintiff received a rating from defendant. Defendant was paid by the issuers of the CDOs to provide its opinion on the creditworthiness of the notes. Defendant gave the CDO tranches purchased by plaintiff its highest and second-highest ratings. However, commencing in July 2007, the CDOs suffered multiple downgrades by defendant and, by April 2008, the CDOs defaulted and wiped out almost all of plaintiff's investment.
After modifying an order of Supreme Court by granting in further part a motion to dismiss made by defendant (M & T Bank Corp., 126 AD3d at 1415, 1417-1418), the sole remaining cause of action in the complaints alleges that defendant committed fraud by issuing credit ratings for CDO tranches purchased by plaintiff that defendant knew were false and misleading. Plaintiff alleges, in pertinent part, that defendant knew in 2006 and 2007 that the credit risks of certain non-prime RMBS tranches—which included RMBS containing Alt-A loans—were increasing, yet failed to account for such increased credit risks in its ratings for CDOs collateralized by RMBS. In claiming justifiable reliance on that purported fraudulent conduct, plaintiff alleges that it "relied on credit ratings because [it] had neither the access to the same data as the rating agencies nor the capacity or analytical ability to assess the securities [it [*2]was] purchasing" (see id. at 1417).
Following certain related discovery, defendant served a subpoena seeking the deposition testimony of a nonparty, i.e., a former staff underwriter in plaintiff's mortgage department who had alleged in a federal action that plaintiff had not complied with underwriting and reporting standards required for mortgage loans guaranteed by the Fair Housing Administration (FHA). Plaintiff moved, in relevant part, for an order pursuant to CPLR 2304 quashing the nonparty subpoena and for a protective order pursuant to CPLR 3103 preventing the deposition of the nonparty and the use of any discovery devices to obtain information related to the nonparty or the federal action. Defendant now appeals from an order insofar as it granted the motion to that extent.
Initially, we reject defendant's contention that plaintiff was not entitled to seek to quash the nonparty subpoena. CPLR 2304, which authorizes a motion to quash a subpoena, provides as relevant here that, "[i]f the subpoena is not returnable in a court, a request to withdraw or modify the subpoena shall first be made to the person who issued it and a motion to quash . . . may thereafter be made in the supreme court." Here, after defendant declined plaintiff's request that it withdraw the subpoena, plaintiff moved to, inter alia, quash the subpoena. Contrary to defendant's contention, we conclude that plaintiff, as a party in these actions, was entitled to move to quash the subpoena directed to the nonparty (see American Heritage Realty LLC v Strathmore Ins. Co., 101 AD3d 1522, 1523 [3d Dept 2012], abrogated on other grounds by Matter of Kapon v Koch, 23 NY3d 32, 37-38 [2014]; David D. Siegel & Patrick M. Connors, New York Practice
§ 351 at 652 [6th ed 2018]; Patrick M. Connors, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C2304:1; C3101:23; C3120:12).
None of defendant's contentions warrant a different result on that point. As distinguished from the present circumstances in which a party to pending litigation moves to quash a nonparty subpoena served by another party, the inapposite authority relied upon by defendant stands for the proposition that, when a governmental agency serves an investigative subpoena on an entity or individuals and then a third person, i.e., the subject of the investigation, seeks judicial intervention to quash the subpoena, the third person must have standing to seek such relief through a proprietary interest, confidential relationship, or privilege with respect to the information sought (see e.g. Matter of Oncor Communications v State of New York, 218 AD2d 60, 62-63 [3d Dept 1996]; Matter of Congregation B'Nai Jonah v Kuriansky, 172 AD2d 35, 37 [3d Dept 1991], appeal dismissed 79 NY2d 895 [1992]; 38-14 Realty Corp. v New York City Dept. of Consumer Affairs, 103 AD2d 804, 804 [2d Dept 1984], appeal dismissed 64 NY2d 648 [1984]). To the extent that AQ Asset Mgt. LLC v Levine (111 AD3d 245, 260 [1st Dept 2013]) makes no such distinction, we decline to follow it. Moreover, contrary to defendant's assertion, we did not adopt the investigative subpoena standing standard as being applicable, as a matter of law, to parties in pending litigation in Kephart v Burke (306 AD2d 924, 924-925 [4th Dept 2003]). There, we first rejected the plaintiff's contention that the defendants were not entitled to move to quash nonparty subpoenas issued by the plaintiff and then merely added, in dicta, that the cases relied upon by the plaintiff did not compel a different result because the defendants, in any event, did have a proprietary interest in the materials sought and those materials might have contained privileged information (id.). Based on the foregoing, we conclude that plaintiff here was entitled to seek to quash the nonparty subpoena.
We nonetheless agree with defendant that the court erred in granting that part of plaintiff's motion seeking to quash the nonparty subpoena. "CPLR 3101 (a) (4) allows a party to obtain discovery from a nonparty, and provides that '[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof' " (Snow v DePaul Adult Care Communities, Inc., 149 AD3d 1573, 1574 [4th Dept 2017]; see Matter of Barber v BorgWarner, Inc., 174 AD3d 1377, 1378 [4th Dept 2019], lv denied 34 NY3d 986 [2019]). The phrase "material and necessary" in CPLR 3101 "must 'be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity' " (Kapon, 23 NY3d at 38, quoting Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968]; see Barber, 174 AD3d at 1378). "An application to quash a subpoena should be granted [o]nly where the futility of the process to uncover anything legitimate is inevitable or obvious . . . or where the information sought is utterly irrelevant to any proper inquiry" (Anheuser-Busch, Inc. v [*3]Abrams, 71 NY2d 327, 331-332 [1988] [internal quotation marks omitted]), and the burden is on the party seeking to quash a subpoena to make such a showing (see Kapon, 23 NY3d at 38-39; Barber, 174 AD3d at 1378).
As a threshold matter, we agree with defendant that a prior determination and order by Supreme Court finding that documents related to the federal action were not relevant to the present actions did not constitute the law of the case with respect to that part of the motion seeking to quash the subpoena for the nonparty's deposition testimony and, thus, that the court was not bound by that doctrine. " 'The law of the case doctrine generally precludes relitigating an issue decided in an ongoing action where there previously was a full and fair opportunity to address the issue' " (Matter of Murtaugh v New York State Dept. of Envtl. Conservation [appeal No. 2], 134 AD3d 1392, 1394 [4th Dept 2015]).
Here, the issue decided by the court in its prior determination and order was only that documents related to the federal action—which according to plaintiff's own representations involved just FHA loans—were not relevant to the present actions. As defendant correctly contends, however, the court did not make any determination about the scope of the nonparty's personal knowledge and possible testimony about the non-prime Alt-A loans that partly underlie the CDOs at issue in the present actions. Thus, the issue of relevance decided in the prior determination and order is not the same as the issue presented here, i.e., the relevance of the nonparty's personal knowledge and possible testimony about the Alt-A loans, and the law of the case doctrine does not apply in such circumstances (see Kruesi v Money Mgt. Letter, 228 AD2d 307, 308 [1st Dept 1996], lv denied 88 NY2d 814 [1996]). Moreover, the prior determination and order preceded a deposition of one of plaintiff's corporate representatives, "which introduced additional evidence and raised further issues, 'thereby precluding application of the law of the case doctrine' " (Ziolkowski v Han-Tek, Inc., 126 AD3d 1431, 1432 [4th Dept 2015]). In any event, even assuming, arguendo, that the law of the case doctrine applied to Supreme Court in this case, we note that the doctrine "is not binding upon this Court's review of the order" (id.; see Martin v City of Cohoes, 37 NY2d 162, 165 [1975], rearg denied 37 NY2d 817 [1975]; Micro-Link, LLC v Town of Amherst, 155 AD3d 1638, 1642 [4th Dept 2017]).
On the merits, we conclude that plaintiff, in moving to quash the nonparty subpoena, failed to meet its burden of establishing "either that the discovery sought is 'utterly irrelevant' to the action[s] or that the 'futility of the process to uncover anything legitimate is inevitable or obvious' " (Kapon, 23 NY3d at 34; see Wells Fargo Bank, N.A. v Confino, 175 AD3d 533, 534-535 [2d Dept 2019]; Barber, 174 AD3d at 1378-1379; Ziolkowski, 126 AD3d at 1432). As noted, plaintiff has alleged that defendant knew in 2006 and 2007 that the credit risks of certain non-prime RMBS tranches—which included RMBS containing Alt-A loans—were increasing, yet failed to account for such increased credit risks in its ratings for CDOs collateralized by RMBS, and that plaintiff justifiably relied on those credit ratings "because [it] had neither the access to the same data as the rating agencies nor the capacity or analytical ability to assess the securities [it was] purchasing" (see M & T Bank Corp., 126 AD3d at 1417). It is well established that "[w]here a 'sophisticated business person or entity . . . claims to have been taken in,' the justifiable reliance rule 'serves to rid the court of cases in which the claim of reliance is likely to be hypocritical' " (Ambac Assur. Corp. v Countrywide Home Loans, Inc., 31 NY3d 569, 580 [2018]). Thus, as a general matter, plaintiff's own underwriting practices and the feedback it received thereon—specifically with respect to the origination of higher risk non-prime Alt-A loans that plaintiff knew or should have known would be packaged into RMBS by investment banks upon their sale—are relevant to plaintiff's alleged justifiable reliance on defendant's credit ratings of the CDOs that were collateralized in part by RMBS.
More particularly with respect to the nonparty, we agree with defendant that plaintiff has not shown that the nonparty's testimony would be utterly irrelevant or that it was inevitable or obvious that taking the nonparty's deposition would be futile to uncovering anything legitimate (see Wells Fargo Bank, N.A., 175 AD3d at 535; Barber, 174 AD3d at 1378-1379; Ziolkowski, 126 AD3d at 1432). Although plaintiff, relying on the affidavit of the nonparty's former supervisor, contends that the nonparty "does not have the extensive knowledge that [defendant] claims," the former supervisor confirmed that the nonparty had some mortgage underwriting authority with respect to non-agency Alt-A loans and that underwriting those loans comprised nearly one-tenth of the nonparty's work. Thus, plaintiff's own submissions suggest that the nonparty has at least some knowledge of plaintiff's underwriting practices with respect to the [*4]non-prime loans at issue here, and thus it cannot be said on this record that taking the nonparty's deposition would be futile or that the testimony would be utterly irrelevant. We note in any event that even a " 'witness's sworn denial of any relevant knowledge,' . . . [would be] insufficient, standing alone, to establish that the discovery sought is utterly irrelevant to the action or that the subpoena, if honored, [would] obviously and inevitably fail to turn up relevant evidence" (Barber, 174 AD3d at 1379). We therefore conclude that the court erred in granting that part of plaintiff's motion seeking to quash the nonparty subpoena.
Finally, we also agree with defendant that the court erred in granting that part of plaintiff's motion seeking a protective order (see Riordan v Cellino & Barnes, P.C., 84 AD3d 1737, 1739 [4th Dept 2011]).
Entered: February 5, 2021
Mark W. Bennett
Clerk of the Court