■ CREATIVE TRADING COMPANY, INC. et al., Respondents, v LARKIN-PLUZNICK-LARKIN, INC., Doing Business as NATIONAL FASHION & BOUTIQUE SHOW, et al., Appellants.—Order of the Supreme Court, New York County (Shirley Fingerhood, J.), entered June 9, 1988, denying defendants' motion to dismiss the repleaded complaint for failure to state a cause of action, affirmed, with costs.

This is an action under the Donnelly Act, General Business

Law § 340 *et seq.* The plaintiffs are small businesses engaged in the retailing of accessories of interest to women, and the defendants organize and sponsor fashion and boutique shows held at the Javits Convention Center.

It is the plaintiffs' contention that defendants control the exhibit space at the trade show to the detriment of the plaintiffs whose lifeblood depends on gaining some prominence at the exhibition.

We previously held as follows:

"A party claiming a violation of the Donnelly Act, which was modeled on the Federal Sherman Antitrust Act * * * must identify the relevant product market, describe the nature and effects of the purported conspiracy and allege how the economic impact of that conspiracy is to restrain trade in the market in question * * *. While the complaint herein sufficiently pleads these elements, there is one further requirement for a valid claim under the Donnelly Act, the lack of which renders plaintiffs' third and fourth causes of action defective. As the Court of Appeals declared in *State of New York v Mobil Oil Corp.* * * * in discussing the type of contract or agreement deemed by the statute to constitute an unlawful restraint of trade, 'the term, "arrangement" * * * must be interpreted as contemplating a reciprocal relationship of commitment between two or more legal or economic entities similar to but not embraced within the more exacting terms, "contract", "combination" or "conspiracy" '. Thus, the Donnelly Act mandates that there be a conspiracy or reciprocal relationship between two or more entities before liability can be found * * *.

"In the instant situation, defendant Larkin-Pluznick-Larkin, Inc., doing business as National Fashion & Boutique Show, is a corporation of which the individual defendants are all officers or agents. Plaintiffs have failed to identify any alleged coconspirator(s) and may not remedy the defect in their complaint by asserting, in conclusory fashion, the existence of a generalized conspiracy arising out of defendants' various contracts and arrangements or by referring to unilateral business actions taken by them * * *. Consequently, the third and fourth causes of action should be dismissed with leave to plaintiffs to replead in accordance with the foregoing." (136 AD2d 461, 462.)

As the IAS court perceptively noted, the plaintiffs have now remedied the defect by specifying the favored exhibitors who have "conspired and entered into a reciprocal relationship

with defendants. In Paragraph 27 [of the complaint] the defendants are alleged to have entered into a conspiracy with the favored exhibitors pursuant to which the latter guarantee sufficient payment in return for obtaining the most desirable locations; that the conspiracy is an unlawful arrangement for the fixing of fees and the allocation of exhibit space giving competitive advantage to one group of competitors over others and serving to exclude new competitors."

Having complied with our directive, there is no need to analyze, as the dissent does, the possible evidentiary aspects which are more attuned to a motion for summary judgment than a motion to dismiss pursuant to CPLR 3211 (a) (7). Nonetheless, it should be pointed out that a vertical restraint is encompassed by the Donnelly Act. *(See, Anheuser-Busch, Inc. v Abrams,* 71 NY2d 327, 333.) .

In economics, time and place utility is of great consequence and, if, as here alleged, the small exhibitors are relegated to remote areas of the exhibition hall and not given an opportunity to compete for premium space, then there can be a violation of the Donnelly Act. *(Cf., United States v Paramount Pictures,* 334 US 131.) Concur—Kupferman, J. P., Ross and Smith, JJ.

Sullivan and Carro, JJ., dissent in a memorandum by Sullivan, J., as follows: At issue is whether the repleaded complaint states a cause of action under General Business Law § 340 *et seq.,* the Donnelly Act. Since I believe that plaintiffs have failed in their second amended complaint to respond to the court's admonition on the previous appeal, viz., "Plaintiffs * * * may not remedy the defect in their complaint by asserting, in conclusory fashion, the existence of a generalized conspiracy arising out of defendants' various contracts and arrangements or by referring to unilateral business actions taken by them" *(Creative Trading Co. v Larkin-Pluznick-Larkin, Inc.,* 136 AD2d 461, 462, citing *International Tel. Prods. v Twentieth Century-Fox Tel. Div.,* 622 F Supp 1532), I would reverse and dismiss the complaint.

Larkin-Pluznick-Larkin (Larkin) and the other defendants organize and sponsor fashion and boutique shows, while the 166 plaintiffs, exhibitors at a show organized by Larkin, sell fashion and boutique merchandise, primarily to retailers. Defendants charge the same amount per square foot, on a "first pay, first served" policy, regardless of the amount of space rented at the exhibition, or of the location of the booth. The essence of plaintiffs' claims is that this process effectively

prevented them from obtaining choice exhibition space, and permitted defendants to favor certain exhibitors while others were placed at a substantial competitive disadvantage.

In order to establish the conspiracy plaintiffs are relying on the mere showing that some exhibitors had better locations than others at the exposition. In *State of New York v Mobil Oil Corp.* (38 NY2d 460, 461-462), one of the leading cases in assessing the reach of the Donnelly Act, the Court of Appeals held that "a systematic and deliberate practice of price discrimination by [Mobil] in the sale of gasoline to its dealers * * * would not fall within the proscription of [the] Donnelly Act". In explaining its decision, the court, in compelling language, added:

"The addition of a conclusory allegation as to the effect of a described practice (here effecting restraint of trade) cannot operate, of course, to bring a one-sided practice which is outside the scope of the statute within its proscription.

"Aside from the compelling considerations of statutory construction, we note that differential prices have long been a familiar characteristic of our free enterprise system, never thought to be either immoral or unlawful. There are many valid reasons for differentials based on accepted economic theory, turning for instance on cost justification, quantity purchases, financial stability of the buyer, local competitive context, intracompany or familial customer relationship, or other special circumstance." *(Supra,* at 464; *see also, Saxe, Bacon & Bolan v Martindale-Hubbell, Inc.,* 710 F2d 87.)

Notwithstanding our directive, plaintiffs have now failed, for the second time, to supply the allegations of unlawful concerted action essential to a claim under the Donnelly Act. Instead of alleging facts that would tend to establish an unlawful conspiracy, they repeatedly parrot the words "conspiracy and reciprocal relationship", without specifying the dates or places relevant to the alleged conspiracy. Instead of identifying specific participants in an unlawful conspiracy, as directed, they refer to a list of 154 businesses that they believe were alloted superior exhibition space, and assert conclusorily, "on information and belief", that these businesses "entered into a reciprocal relationship with defendants." Finally, instead of alleging the existence of bilateral agreements to discriminate against them, plaintiffs allege only that defendants agreed to allocate choice space to those who pay first— agreements which merely have the effect of disadvantaging them. Such a recitation is insufficient, since all plaintiffs have

done is to compile a list of exhibitors that they believe benefited from defendants' assignment of booth space.

In order to do business defendants must necessarily enter into agreements with others, in this case exhibitors who lease space. Defendants allocate the most desirable booth space to exhibitors that guarantee early payment. Such agreements do not make either the sponsor/organizer or the exhibitor a party to a conspiracy. As the Court of Appeals recognized in *Mobil (supra)*, a company's decision to discriminate among its customers is necessarily "bilateral" to the extent it involves both the discriminating company and its customers. However, this bilateralness is not of itself the type of "arrangement" that gives rise to a cause of action under the Donnelly Act. (38 NY2d, *supra*, at 464.) Acceptance of the rationale underlying the repleaded complaint would make anyone in business who ever adhered to the principle of "first come, first served" a participant in a conspiracy. As defendants note, sports franchises allocate to season ticket holders who guarantee early payment the most desirable seats. Under plaintiffs' theory, however, the franchise and its season ticket holders are parties to a repricical arrangement precluded under the Donnelly Act.

The contrast between the routine conduct recited in the repleaded complaint and the conduct of persons found to have conspired in violation of the antitrust laws is stark. Conspirators under the antitrust laws include competitors who agree among themselves to fix prices *(see, e.g., Sugar Inst. v United States,* 297 US 553, 601-602), competitors who agree among themselves to divide markets *(see, e.g., United States v Topco Assocs.,* 405 US 596), competitors who agree among themselves to boycott a fellow competitor *(see, e.g., Eastern States Lbr. Assn. v United States,* 234 US 600), and competing distributors who conspire among themselves and with a supplier to terminate a fellow distributor for selling at a discount *(see, e.g., United States v General Motors,* 384 US 127). Here, there is no allegation of any conspiracy among plaintiffs' competitors. The alleged conspiracy involves defendants—who do not compete with plaintiffs—and individual exhibitors who pay for space early.

Plaintiffs' real grievance is not with the manner in which defendants allocate booth space, but with its effect, namely, that they received what they believe to be inferior space. Clearly, however, under any system of allocation, some exhibitors must draw the allegedly inferior space and, in turn, will be unhappy with their space allocation. Thus, under plaintiffs'

reasoning, any arrangement whereby booth space is allocated would be suspect, and the trade show sponsors and organizers placed at risk insofar as an antitrust law violation is concerned. In my view, the Donnelly Act neither requires nor supports such an absurd result.

In denying the motion to dismiss, the motion court misread the repleaded complaint to allege mutual agreements to keep competitors at a disadvantage. In fact, the repleaded complaint does not allege that the purported coconspirators agreed with defendants "to pay first in order to obtain not only the best exhibition space but also the advantage of discriminating against their competitors." While the repleaded complaint asserts that the alleged coconspirators received the most desirable booth space "in return" for early payment, it does not assert that the coconspirators paid in order to discriminate. Plaintiffs do not allege that in return for early payment favored exhibitors were allowed to designate the particular exhibitors who would receive the "least desirable space." Nor do plaintiffs allege that paying early entitled favored exhibitors to designate that these plaintiffs, generally, would receive the "least desirable space." Further, the repleaded complaint does not contain any allegation that plaintiffs were "precluded from the opportunity to pay first and gain the advantage of obtaining better space for the same price." Indeed, plaintiffs have even failed to assert that some or all of them were not in fact given the opportunity to pay first.

Accordingly, I would reverse and grant the motion to dismiss the repleaded complaint. Furthermore, since plaintiffs have had ample opportunity to plead facts entitling them to relief under the Donnelly Act and have failed to do so, further leave to amend should not be permitted.